IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MICHAEL VAN CASTER,

                        Plaintiff,

        v.

RANDALL HEPP, CHRIS KRUEGER,                    OPINION and ORDER
DYLON RADTKE, LAURA BARTOW,
CANDACE WHITMAN, JULIE LUDWIG,                  18-cv-845-jdp
CHARLES LARSON, ROBERT FRANK,
YVETTE MOORE, ROBERT STELIGA,
DENISE BONNETT, ROBERT WATERMAN,
and JOHN BAHR,

                        Defendants.[1]

        Plaintiff Michael Van Caster, appearing pro se, is a prisoner at Fox Lake Correctional Institution. Van Caster alleges that defendant prison officials failed to properly treat his medical problems, including gastrointestinal problems such as severe abdominal pain, constipation, and vomiting, and cysts on his kidneys that he believes caused him to have blood in his urine. Van Caster contends that defendants violated his rights under the Eighth Amendment to the United States Constitution.

        The group of defendants represented by the attorney general's office, whom I'll refer to as the "state defendants," has filed a motion for summary judgment. Dkt. 79. The remaining defendant, Nurse Yvette Moore, has filed her own motion for summary judgment. Dkt. 72. I will grant both of those motions and dismiss the case because Van Caster fails to show that any of the defendants consciously disregarded his medical needs.

---

[1] I have amended the caption to reflect the spelling of defendant Krueger's, Radtke's, and Whitman's names as presented in their summary judgment materials.

PRELIMINARY MATTERS

Van Caster has filed a motion to compel discovery, listing dozens of medical records that he says the state defendants have not produced for his inspection, and stating that they refused to answer interrogatories. Dkt. 67. It's not completely clear whether Van Caster means to file a motion about two different problems—his request for production of documents and his interrogatories—or whether he inadvertently refers to "interrogatories" when he means his request for production of documents. The state defendants say that they did not receive interrogatories from him, he does not provide a copy of the relevant interrogatories or any other proof that he sent them to the state defendants, he didn't confer with the state defendants before filing his motion, and he did not reply to their response. I'll deny the motion to compel regarding interrogatories.

As for Van Caster's medical records, the state defendants explain that they included each of those records in the 1,700-page medical file they sent him and they state that he didn't confer with them before filing his motion. Van Caster didn't reply to the response, and I can see from the state defendants' summary judgment materials that at least some of the alleged missing documents are indeed part of the Bates-stamped medical file that the state defendants submitted in support of their motion for summary judgment. Because Van Caster does not make clear what documents are actually missing from the medical file that the state defendants produced and because he did not confer with them to hash out any discrepancies, I will deny his motion to compel.

Van Caster filed a motion asking for a six-month extension of his summary judgment response deadline "due to his health," but he did not explain what health problems were affecting his ability to respond to the motions for summary judgment. He followed with two

documents responding to the summary judgment motions—one filed before his February 20 deadline to respond, Dkt. 89, and one filed about a month after the deadline, Dkt. 92. Van Caster's filings do not comply with this court's procedures for briefing summary judgment motions: he does not identify which specific proposed findings by defendants he disputes, he intertwines his legal arguments with his proposed findings, and many of his findings cite his entire medical file rather than the individual pages supporting each finding. Also, because his second, late response was filed after defendants filed their replies, defendants have not responded to that filing. Nonetheless, I'll grant Van Caster's motion for extension of time and consider both of his responses. I will not extend the briefing further to give defendants a chance to respond to Van Caster's second response because it is unnecessary to do so. Even considering Van Caster's second response, I conclude that summary judgment should be granted to defendants.

Well after briefing was completed on defendants' summary judgment motions, Van Caster renewed his previously denied motion for the court's assistance in recruiting him counsel. Dkt. 98. Van Caster reiterates that he has a "psychological disability" hampering his ability to litigate the case, and he says that he cannot adequately oppose defendants' medical experts because of his lack of legal or medical training. Van Caster doesn't explain his psychological impairment, and his lack of legal or medical training is commonplace among pro se litigants in this court. I previously told Van Caster that it was unnecessary to consider recruiting counsel until it was clear exactly what issues were in dispute. Van Caster's summary judgment briefing does not comply with the court's procedures in many respects, but he does explain what he believes were the problems with his care. And his supporting evidence is already in the record: he generally does not dispute the medical records detailing his treatment history.

Rather, he believes that the record shows that defendants violated his Eighth Amendment rights. Ultimately, his claims do not fail because he lacks counsel; they fail because his medical record does not show that defendants consciously disregarded his problems. So I will deny his motion for recruitment of counsel and proceed to address defendants' motions for summary judgment.

Van Caster has filed a motion asking for a bench trial rather than a jury trial. Dkt. 97. I'll deny that motion as moot because I am granting summary judgment to defendants on all of Van Caster's claims.


UNDISPUTED FACTS

Except where noted, the following facts are undisputed.

**A.  Parties**

Plaintiff Michael Van Caster is currently incarcerated at Fox Lake Correctional Institution (Fox Lake), and his claims concern the medical treatment he received while incarcerated there. All of the defendants worked at Fox Lake for at least part of the time period at issue here. Charles Larson and Robert Steliga were physicians. Robert Waterman was a psychiatrist. Candace Whitman is a registered nurse who served as the health services manager. Robert Frank was an advanced practice nurse prescriber. Julie Ludwig, Denise Bonnett, and Yvette Moore were registered nurses. Randall Hepp was the warden. Chris Krueger was the deputy warden until June 2018, when Dylon Radtke became the deputy warden. John Bahr was a correctional sergeant. Laura Bartow was an inmate complaint examiner.

**B. Medical treatment**

**1. Gastrointestinal problems**

Upon entry into the state prison system, Van Caster was noted to have a history of gas and bloating. In 2010, he had a colonoscopy for indications of abdominal pain, rectal bleeding, and hemorrhoids. He was diagnosed with diverticulosis, among other conditions.

Van Caster was transferred to Fox Lake in April 2016. In mid-June 2016, Van Caster was seen in the Health Services Unit (HSU) for complaints of gas, bloating, and abdominal pain with cramping. He was prescribed Regulax to address constipation and told to increase ambulation and fluids and keep a food diary.

On July 28, 2016, Van Caster filed an inmate grievance alleging that his July 1 appointment about his gastrointestinal problems was canceled with 30 minutes notice. The complaint examiner contacted Health Services Manager Whitman. Whitman reviewed Van Caster's records, which did not show that Van Caster had an appointment scheduled for that day. The grievance was dismissed.

In October Van Caster was seen by Nurse Prescriber Frank. Although the visit was for other medical issues, Van Caster stated that he had previously had a colonoscopy and that he had had several polyps removed. Frank requested that Van Caster's colonoscopy records be obtained from the original provider. The prison received the records in November.

In January 2017, Dr. Larson reviewed Van Caster's colonoscopy records. They showed that a benign-appearing polyp was removed and diverticulitis—small pouches protruding from the wall of the colon—was found in Van Caster's sigmoid colon. Diverticulitis is fairly common and generally is not harmful unless one of the pouches becomes infected. Because the HSU did

not have the pathology report on the removed polyp, Larson ordered a surveillance colonoscopy to better assess Van Caster.

In February, Van Caster was seen by Frank. Among other issues, Van Caster requested to be treated for chronic constipation. Frank ordered a probiotic and a stool softener.

On March 20, Van Caster had a colonoscopy at Waupun Memorial Hospital. The doctor noted that there was extensive diverticular disease in the sigmoid colon but otherwise the examination was unremarkable with no recurrent polypoid disease seen. He recommended that the next exam be performed in five years.

A few days later, Van Caster submitted a health service request stating that he had continuous stomach pain, nausea, constipation, and diarrhea. He was scheduled to see an "advanced care provider," which I take to mean either a doctor or a nurse prescriber.

In early April, Frank ordered Van Caster fiber pills to be taken daily. Frank saw Van Caster the next day to discuss his colonoscopy results. Because of Van Caster's continued complaints of diarrhea, bloating, and constipation, Frank suspected that he might have mild mixed irritable bowel syndrome (IBS).

Van Caster was seen in the HSU on April 13 and 14 for his abdominal pain, and he was advised to not take his stool softeners when having diarrhea, take fiber as directed, avoid spicy food, and increase fluid intake.[2] Several days later, Larson ordered Van Caster Miralax, a laxative, three times a day for three months and milk of magnesia, an antacid and laxative, four times a day for one month.

---

[2] The state defendants do not explain who saw Van Caster on these occasions, and it is unclear from the records who did.

On April 25, Van Caster addressed a "Interview/Information Request" form to Health Services Manager Whitman stating that he had ongoing abdominal pain and that he had not been seen for a scheduled appointment several days before. The request was triaged by a non-defendant nurse, who saw him in the HSU and scheduled him to be seen by an advanced care provider. Van Caster saw Frank a couple days later. Frank recommended a trial of Linzess, a medication that treats IBS with constipation as the main symptom. Larson ordered that medication. Frank told Van Caster to try the new medication by itself for a week and then add back his other stool softeners one by one if needed. Frank also gave him a food diary and encouraged him to increase fluids and ambulation.

On June 2, Larson saw Van Caster for his reports of severe abdominal pain, constipation, and vomiting that started the same time he was prescribed Depakote by his psychiatrist, Dr. Waterman. Larson ordered the Depakote dosage to be reduced, as it can cause constipation and abdominal pain, and he ordered blood tests. Larson also recommended that Van Caster drink only clear liquids until his stomach settled. About two weeks later, Waterman discontinued Van Caster's Depakote. In late June, Frank saw Van Caster, who stated that he had stopped taking Linzess after a few days because he developed diarrhea. Frank counseled him on diet and exercise and decreased the dose of Linzess to 72 mg per day. In early July, Larson renewed Van Caster's prescription for Miralax.

In mid-October, Frank renewed Van Caster's probiotic and fiber. Frank saw Van Caster in late October for complaints both about gastrointestinal issues and sinus problems. Van Caster stated that he did not receive the reduced dosage of Linzess ordered by Larson and that he had been using only the fiber capsules for constipation. Medication records show that Van Caster had received a "card" of Linzess in July. Frank referred Van Caster to an outside

ear, nose, and throat doctor and stated that he would schedule a follow up for the gastrointestinal and sinus problems after that referral. Frank also gave Van Caster a new bottle of Linzess with the reduced dosage.

In late January 2018, Larson prescribed Linzess for one year to treat Van Caster's IBS. Larson renewed his probiotic prescription about a month later.

On March 2, 2018, Van Caster was seen by Dr. Steliga regarding his constipation. In his note, Steliga stated that Van Caster had a hostile attitude and that Van Caster believed that nothing would help his constipation. Steliga prescribed milk of magnesia and stool softeners Colace and Dulcolax. Van Caster wrote to Health Services Manager Whitman to return the milk of magnesia and Colace because he did not believe that they would work.

A few days later, Van Caster filed an inmate grievance stating that at his recent appointment, Steliga told him "I guess you're simply going to die then" and "some things medication just can't fix so I guess you die." Complaint examiner Bartow contacted Whitman, who reviewed the medical record for that appointment Steliga's notes said that Van Caster entered with a hostile attitude, believing that nothing would help his condition, and that Van Caster left "in a huff." Bartow recommended that the grievance be dismissed because she could not determine what actually occurred at the appointment, but that Van Caster's rude demeanor and actions when addressing staff often produced a rude response. The grievance was dismissed.

While Van Caster's grievance was pending, he sent two interview/information requests to Whitman, complaining about Steliga's care during his March 2 appointment. Whitman told Van Caster that the issue was already being handled in his grievance. Van Caster also requested to be seen by a different prison doctor, Dr. Superville, instead of Steliga for future

appointments, but the prison medical system does not allow prisoners to choose their providers. Van Caster had a scheduled April 11 appointment with Steliga, but Van Caster refused to go to that appointment.

Several days later, Van Caster addressed a health service request to Whitman asking about the status about seeing a gastroenterologist. A non-defendant nurse responded, stating that Van Caster was scheduled to see a specialist in June (it's unclear who scheduled that appointment). Van Caster sent additional requests about refusing care from Steliga and Larson, that were responded to by the same non-defendant nurse.

On April 18, despite officials' comments about prisoners not being able to pick certain providers, Van Caster was seen by Dr. Superville. Superville ordered an appointment with a dietician to address Van Caster's chronic constipation that was not responding to medications. Superville also discontinued Van Caster's Dulcolax, milk of magnesia, Colace, Linzess, and fiber pills. Van Caster met with the dietician in late April. They discussed his abdominal pain, daily medications, and eating and exercise habits. The dietician recommended that he take advantage of recreation time daily and eat breakfast, not just lunch and dinner. Because Van Caster was sleeping through breakfast and medication times can affect constipation, a psychologist changed Van Caster's prescription for trazodone (an antidepressant); I take the parties to be saying that the timing of this medication's administration was moved up to help Van Caster wake up earlier.

On May 1, 2018, Van Caster filed an inmate grievance alleging that he was not receiving proper care for his abdominal pain and was not given a high-fiber snack bag. Bartow contacted Whitman, who reviewed his records. The record showed that the dietician and Van Caster had discussed him receiving a high-fiber snack bag, but the dietician later decided not to change his

diet. The grievance was dismissed, with instructions for Van Caster to file a health service request for further treatment concerns.

In early May, Superville again saw Van Caster and she noted no tenderness of the abdomen, no masses, the liver and spleen were not palpable, and bowel sounds were normal. She ordered an abdominal ultrasound, an x-ray of his abdomen, and an appointment to see the gastroenterologist at the University of Wisconsin to address Van Caster's constipation and pain. Van Caster had an x-ray on May 11. The results showed no obstruction, mild bowel gas distention in the right lower quadrant, and modest to moderate colonic and rectal stool content. Superville saw Van Caster and reviewed the results. She ordered a bottle of magnesium citrate, a saline laxative.

On May 14, Van Caster submitted a health service request stating that it had been a week since his trazadone dosage time had been changed, but it had not made a difference in him failing to wake up to have breakfast. Whitman responded that he should give it more time and that he should routinely eat breakfast and increase his amount of activity and exercise.

On May 15, an ultrasound of Van Caster's abdomen was performed. The results stated that there was limited visualization but no evidence of a right upper quadrant abnormality. The report noted that a CT scan might be considered if there was a continuing concern. Van Caster's kidneys and liver appeared unremarkable. After reviewing both the x-ray and ultrasound results and finding them non-conclusive, Superville ordered a CT scan with IV contrast to diagnose Van Caster's right-side abdominal pain. The CT scan was performed on July 2 at Waupun Memorial Hospital. No acute findings were seen in the abdomen or pelvis.

In early July, Van Caster filed an inmate grievance stating that he had received poor care when he fell ill the day after his CT scan: he had dry heaves and nausea, he believed that

he had gotten sick from the contrast used from the scan, and he had to call for the HSU three times before he was seen by a nurse. Complaint examiner Bartow contacted Whitman, who reviewed Van Caster's records. The records showed that Van Caster was seen that night by a nurse, who noted no apparent abnormalities. Bartow recommended dismissing the grievance, stating that the speed at which an inmate is seen depends on the urgency of the need and the number of inmates who present a more urgent need. The grievance was dismissed.

Around this time, Van Caster sent a letter to Warden Hepp about his treatment after the CT scan. Hepp forwarded it to Whitman. Whitman told Van Caster that his complaint was already being handled through the grievance procedure.

Van Caster was seen by Nurse Bonnett on July 11. Bonnett did not yet have the results of the CT scan. Van Caster said that his abdominal pain was worse in the morning so he would skip breakfast. He reported no exercise. Bonnett suggested exercise, at which point Van Caster became upset and left the appointment. Bonnett then requested his CT scan results from Waupun Memorial Hospital.

Two days later, the HSU received a letter Van Caster addressed to Whitman, stating that Nurse Bonnett yelled at him during their appointment after he asked about his CT scan results; he said that Bonnett yelled that she did not have the results yet and made "accusations that this is supposedly all [his] fault." Van Caster did not want to be seen by Bonnett again. Dkt. 82-4, at 1109–1110.[3] Whitman responded, stating that it can be frustrating if he does

---

[3] Van Caster's medical records are split into four exhibits. Dkt. 82-1 through 82-4. In this opinion, citations to those medical records are to the Bates numbering of the entire file, not the numbering of the respective exhibits.

not agree with what a provider says, but that the HSU does not allow patients to choose their provider or switch providers.

In late August, Van Caster was seen at UW Health Gastroenterology by non-defendant Nurse Practitioner Elizabeth Holden. Van Caster stated that he had used Miralax, milk of magnesia, Dulcolax, and Linzess but that nothing had helped him. He stated that he did not use these medications in combination, instead using one for an extended period. Holden requested the recent CT scan, ultrasound, x-ray, and colonoscopy results. Pending the results of blood tests, she recommended a GoLytely bowel purge followed by daily Miralax and Dulcolax every two to three days. She noted that she would follow up in six weeks via telemedicine after receiving the recent medical imaging results.

On September 3, Van Caster was sent to the emergency room at Waupun Memorial Hospital for worsening abdominal pain, blood in his stool, nausea, and chills. A CT scan showed colonic diverticulosis, bilateral renal cysts, and no acute intra-abdominal finding. He was prescribed Miralax and milk of magnesia and noted to follow up for the lower gastrointestinal bleeding. A follow-up appointment was scheduled with UW Health Gastroenterology.

On September 11, Warden Hepp received a letter from Van Caster stating that he had filed several requests for medical information about abdominal pain and treatment and he was not getting positive results from his requests. Hepp forwarded this letter to Whitman, who saw Van Caster in person, along with Nurse Ludwig, on September 18 to address his concerns. They told Van Caster that Nurse Practitioner Holden had received his emergency room notes, and she concluded that they should proceed with the GoLytely bowel purge followed by daily Miralax and Dulcolax. The purge was performed that day.

Two days later, Van Caster was seen by Nurse Ludwig for a "sick call." Van Caster reported clear liquid stool, which Ludwig explained was an expected outcome following a bowel purge. She encouraged him to increase fluids and adhere to a high fiber diet. She noted he had a follow-up appointment scheduled with UW Health Gastroenterology.

On October 19, Van Caster had a telemedicine follow-up with Nurse Practitioner Holden. She noted that the CT scan did not identify any acute findings in the abdomen. Van Caster said that he completed the purge and that he tried combination therapy with Miralax and Dulcolax, but he stopped because it was too painful, and that currently he was not taking anything for his constipation. Because he also reported occasional black stools, Holden ordered HSU to obtain a fecal sample and repeat the blood work. She started him on a trial of Linzess 290 mg and Miralax 17 g. If there was no improvement, she would consider starting Amitiza, which treats chronic constipation and IBS with constipation. She noted that she would follow up in two months.

Dr. Larson saw Van Caster on December 6 for his right knee pain. At this encounter they also discussed his abdominal issues. Larson ordered that Van Caster be sent patient education materials on diverticulosis and signs and symptoms of diverticulitis and preventative diet and lifestyle. He was to report any change in his status regarding chronic constipation to nursing staff.

### 2.  Kidney cysts and blood in urine

In early June 2017, Van Caster reported that his urine was darker than usual, but he did not complain of blood being present. He was seen that day by Dr. Larson. Larson recommended that Van Caster make a diet change to try to consume only clear liquids to allow

his stomach to settle. Dr. Larson also ordered his Depakote dosage be decreased to address his constipation.

The July 2018 CT scan noted that there were "some scattered very tiny focal low-density nodules in the kidneys which may represent tiny cysts." Dkt. 82-4, at 1648. Most kidney cysts do not cause complications, and the presence of low-density nodules that may be cysts was not something that would ordinarily need treatment.

In early September 2018, Van Caster had another CT scan at the emergency room. This scan showed small bilateral cysts as documented in the previous CT scan. The emergency room doctor did not suggest that the cysts needed to be treated. Van Caster reported blood in his stool, but he did not report blood in his urine or other symptom that would be an indication of a problem with his kidneys. Test results from the emergency room revealed a trace amount of blood in his urine.

On September 19, Van Caster wrote to Warden Hepp stating that his September 3 CT scan showed a cyst on his kidney and blood in his urine. Van Caster wrote a health service request the same day noting these same concerns. The request was received by an advanced care provider (the parties do not say who) on September 20; Van Caster was seen that day by Nurse Ludwig. Van Caster stated that he had intermittent issues with dribbling urine and inability to maintain a stream. He also was concerned about the CT scans in July and September showing cysts on his kidneys. He did not specifically mention blood in his urine. Ludwig explained that benign cysts are not concerning and that if there were signs of impeding urine production, blood in the urine, or systemic infection, the cysts could be investigated further.

### 3. Defendant Nurse Moore's treatment

Nurse Moore saw Van Caster for teeth pain and sensitivity in June 2016, back pain in November 2016, and chest and arm pain in December 2016. She did not see him for the medical problems discussed in this lawsuit.

ANALYSIS

Van Caster brings Eighth Amendment claims against defendants for failing to properly treat his medical problems. More specifically, Van Caster alleged the following in his complaint:

- Defendants Candice Whitman, Julie Ludwig, Charles Larson, Robert Frank, Yvette Moore, Dr. Steliga, Denise Bonnett, Robert Waterman, and John Bahr failed to provide Van Caster with adequate testing or treatment for his gastrointestinal problems, cysts on his kidney, and blood in his urine.

- Defendants Randall Hepp, Chris Krueger, Dylon Radtke, and Laura Bartow failed to intervene in his inadequate treatment; instead they dismissed the inmate grievances he filed about the lack of adequate medical treatment.

The Eighth Amendment prohibits prison officials from acting with conscious disregard toward prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). A defendant "consciously disregards" an inmate's need when the defendant knows of and disregards "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a

15

substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

As I stated above in denying Van Caster's motion for the court's assistance in recruiting counsel, his summary judgment materials are vague, but I can understand the basis of his Eighth Amendment claims. He disputes few of defendants' proposed facts, but he disagrees about whether his medical records show that defendants violated his Eighth Amendment rights.

## A. Gastrointestinal problems

I'll start by discussing the treatment for Van Caster's ongoing gastrointestinal problems like gas, bloating, constipation, and abdominal pain. Defendants appear to concede that these problems were enough to be a serious medical need, so I won't discuss that element of the Eighth Amendment claim further. The question is whether defendants consciously disregarded Van Caster's medical needs.

Van Caster contends that the defendants directly providing his medical care didn't provide enough testing for his problems, and that they persisted in prescribing ineffective treatment. A prison medical provider can violate the Eighth Amendment despite providing some care if the provider "persists in a course of treatment known to be ineffective" or a provider's decision is "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Petties v. Carter*, 836 F.3d 722, 729–30 (7th Cir. 2016). But in considering these issues I must consider the totality of care that Van Caster received, not just pick apart individual decisions. *Id.* at 728.

Given the totality of care that Van Caster received, no reasonable jury could conclude that defendants acted with conscious disregard to his gastrointestinal problems. The Eighth Amendment does not give prisoners the right to demand specific treatment nor does it guarantee successful treatment. The medical record shows that defendants attempted multiple reasonable ways to treat these problems. Over the first two years of the period relevant to this case, the bulk of Van Caster's care was provided by defendant physicians Larson and Steliga and defendant Nurse Prescriber Frank. Van Caster was diagnosed with varying degrees of diverticulosis or diverticulitis, but none of the testing on the record indicates that Van Caster had infected tissue that needed to be removed. Nonetheless, Van Caster continued to suffer pain, constipation, and other symptoms. Larson, Steliga, and Frank prescribed Van Caster several different medications including probiotics, stool softeners, fiber pills, antacids, laxatives, and Linzess. They counseled him about diet, liquid intake, and exercise. Larson ordered a colonoscopy and ordered Van Caster's Depakote dosage to be reduced after it appeared to cause worsening symptoms.

In April 2018, Van Caster started being treated by Dr. Superville, whom Van Caster does not sue. Superville canceled most of the medications that the previous providers had prescribed and referred him to specialists. Both Superville and the specialists ordered various imaging tests. I infer that Van Caster isn't suing Superville because she changed the course of his previous treatment: she canceled what he believed was ineffective treatment by defendants and she obtained more imaging tests. But this isn't enough to show that Larson, Steliga, and Frank's previous treatment violated his Eighth Amendment rights. *See, e.g., Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (disagreements among doctors do not in themselves show that a particular doctor is acting with deliberate indifference). Superville's new treatment didn't

fix Van Caster's problems either. The additional imaging showed nothing remarkable other than Van Caster's pre-existing diverticular disease. And some of the treatments canceled by Superville, like Linzess and Miralax, were later reinstated by the UW specialist nurse practitioner, which supports the reasonability of defendants' earlier treatment decisions.

Ultimately, the medical record shows that the various providers involved in Van Caster's treatment—defendants and non-defendants alike—failed to resolve Van Caster's gastrointestinal problems. Defendant's various treatment decisions may or may not have been correct decisions, but there is no evidence that they were so far outside the scope of accepted medical practice that one could infer that the decision was not truly based in professional medical judgment. *See Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261–62 (7th Cir. 1996). The fact that defendants failed to alleviate Van Caster's symptoms might be a question of medical malpractice, or it might reflect the unfortunate reality that not all chronic conditions can be eliminated. But it is not enough to show that defendants consciously disregarded his problems.

One incident between Van Caster and defendant Steliga merits further discussion. Van Caster filed a grievance saying that Steliga responded to his medical complaints by sarcastically saying that "I guess you're simply going to die then" and "some things medication just can't fix so I guess you die." Steliga stated that Van Caster's attitude at the appointment was "hostile," presumably because Van Caster was growing frustrated with the continued failure of the various treatments for his gastrointestinal problems. That doesn't justify Steliga's remarks; they were clearly inappropriate. But the only reasonable inference is that the remarks reflected Steliga's own level of frustration, not his disregard to Van Caster's condition, given that Steliga indeed attempted to treat Van Caster at the appointment: he prescribed him

18

multiple medications for his gastrointestinal problems, including milk of magnesia, Colace, and Dulcolax. So these inappropriate statements by Steliga are not enough to create a genuine dispute of material fact about his treatment. I'll grant summary judgment to the state defendants on Van Caster's claims against Larson, Steliga, and Frank.

Van Caster sues psychiatrist Waterman, but the only proposed findings against him are that he prescribed Van Caster Depakote, which perhaps exacerbated his symptoms. But after Van Caster complained, Larson reduced the dosage and Waterman soon discontinued the medication altogether. No reasonable jury could conclude that Waterman consciously disregarded Van Caster's health. I'll grant summary judgment to the state defendants on the claims against Waterman.

Defendant Nurses Moore, Ludwig, and Bonnett are barely mentioned in the parties' proposed findings about Van Caster's gastrointestinal problems. Moore filed her own motion for summary judgment, stating that she did not see Van Caster for any of the medical issues that are part of this case. Van Caster does not dispute this. So I'll grant summary judgment to Moore.

 Ludwig saw Van Caster after UW Health staff recommended the GoLytely bowel purge and then saw him again after the purge was performed and Van Caster complained of clear liquid stool. But this was an expected outcome of the purge and there are no other proposed findings suggesting that Ludwig violated his rights. Van Caster wrote a letter stating that Nurse Bonnett yelled at him during a July 11, 2018 appointment, at which Bonnett recommended that Van Caster exercise. Even if Bonnett was rude to Van Caster, there's no indication that she disregarded his medical problems. So I'll grant summary judgment to the state defendants on the gastrointestinal-symptom claims against Ludwig and Bonnett.

19

Van Caster contends that medical staff consciously disregarded his problems by withholding the course of treatment ordered by UW Nurse Practitioner Holden—the bowel purge followed by Miralax and Dulcolax. It's unclear which defendant Van Caster thinks was personally responsible for this claim. But in any event, Holden recommended her proposed course of treatment "pending results," meaning following her receipt of any recent testing or imaging that Van Caster had undergone. *See Dkt.* 82-1, at 49. Prison staff performed the purge shortly after they received confirmation from UW to follow through on the recommendation after UW received Van Caster's emergency room records. So there is no evidence that staff delayed in administering Holden's proposed treatment.

## B.  Kidney cysts and blood in urine

As for the treatment of the cysts on Van Caster's kidneys and blood in his urine, the only direct medical encounter Van Caster had about treating these problems was a meeting with defendant Nurse Ludwig. Van Caster was seen by Ludwig on September 20, 2018 in part in response to his letter and health service request asking about the emergency room test results showing blood in his urine. The parties also discussed Van Caster's response to the bowel purge. At the appointment, Van Caster stated that he had intermittent issues with dribbling urine and inability to maintain a stream and that he was concerned about the CT scans showing cysts on his kidneys. Ludwig explained that benign cysts are not concerning and that if there were signs of impeding urine production, blood in the urine, or systemic infection, the cysts could be investigated further.

Van Caster contends that Ludwig consciously disregarded the cysts by failing to take steps to treat him further given that he was already experiencing two of the symptoms that Ludwig told him to watch for: difficulty urinating and blood in his urine. The state defendants

20

dispute Van Caster's responses to their proposed findings about this appointment because it's unclear which of the findings Van Caster meant to respond to, and he did not cite individual pages of the medical record. But I will consider Van Caster's proposed findings on the issue because his version of events is clear and the state defendants' own findings include citations to the relevant medical records.

Nonetheless, no reasonable jury could conclude that Ludwig violated the Eighth Amendment. Although Van Caster's written complaints mentioned the urine-test result, he did not bring it up at his appointment with Ludwig, instead focusing on his difficulty with urinating and his bowel purge. The only reasonable inferences from Ludwig's response telling Van Caster to keep watching for symptoms are either (1) that she negligently missed the urine-test result or failed to address it at the appointment, which is at most negligence; or (2) that she was aware of the result and thought that the appropriate course of action was to continue monitoring. Given what the medical record showed at that point, Ludwig's decision to have Van Caster monitor his symptoms does not show conscious disregard on her part. Neither CT scan report suggested that the cysts were issues needing treatment. And Van Caster's reported symptoms were not severe. He said that he had intermittent urination difficulties, and he hadn't actually observed the blood in his urine: his ER urine test reported only a trace of blood in his urine. I note further that there is not any evidence that Van Caster's symptoms progressed or that the cysts ultimately harmed him. So I'll grant the state defendants' motion for summary judgment on Van Caster's claims about his cysts and blood in his urine.

## C.  Remaining defendants

The remaining defendants either reviewed treatment decisions by other providers or were not involved with the medical issues in this case.

Defendant Health Service Manager Whitman reviewed Van Caster's medical records for the examiner when Van Caster filed grievances. She also responded to messages sent by Van Caster about issues he was already grieving; she stated that the grievance process was the proper avenue to resolve those issues. When Van Caster was worried that the change in his trazadone dosage time had not yet helped him to wake up in time for breakfast, Whitman told him to give it more time. In his summary judgment materials, Van Caster doesn't identify any of these interactions as violating his rights, nor can I infer that any of them showed Whitman's conscious disregard to his health.

Van Caster states that defendant Sergeant Bahr failed to forward a letter to the appellate complaint examiner and that Bahr destroyed a letter to a lawyer abut obtaining representation. He says that this resulted in him receiving worse medical care. But he doesn't support those findings with any evidence explaining how Bahr's actions harmed the quality of his medical care. His own speculation about the ramifications of Bahr's actions is not enough to show that Bahr violated the Eighth Amendment. *See, e.g., Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (While nonmovant "is entitled . . . to all reasonable inferences in her favor, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." (citation omitted)).

Van Caster contends that defendants Bartow, Hepp, Krueger, and Radtke failed to intervene in his inadequate treatment; instead they dismissed the inmate grievances he filed about the lack of adequate medical treatment.

Bartow recommended dismissal of three of Van Caster's grievances, two based on deference to the medical professionals' decisions. A grievance examiner's proper processing of grievances and reliance on professionals' opinions on medical issues is enough to defeat an

22

Eighth Amendment claim. *See e.g.*, *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). The third recommendation for dismissal was for a grievance about Steliga's inappropriate comments. But I've already concluded that Steliga did not disregard Van Caster's underlying medical problems; Bartow's recommendation to dismiss the grievance didn't disregard his health either.

Van Caster's claims against high-ranking Fox Lake officials also fail. Van Caster's grievance records do not reveal any involvement by Warden Hepp or deputy wardens Krueger and Radtke, nor does Van Caster produce any evidence that they were involved in his grievances. The parties' proposed findings do show that Hepp forwarded Van Caster's letters about his medical problems to medical staff. This doesn't show conscious disregard; it's entirely appropriate for non-medical staff to delegate medical issues to the medical staff. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Radtke says that at some point Van Caster raised medical concerns with him, but he doesn't remember any of those letters being about the problems at issue here, and it is was his practice to refer those concerns to medical staff. Van Caster doesn't provide any evidence suggesting that Radtke ignored complaints about the medical issues involved in this case, and in any event it would have been appropriate for Radtke to forward concerns to medical staff. So I will grant summary judgment to the state defendants on Van Caster's claims against each of the remaining defendants.

ORDER

IT IS ORDERED that:

1. Plaintiff Michael Van Caster's motion for extension of time to file responses to defendants' motions for summary judgment, Dkt. 88, is GRANTED.

2.  Plaintiff's renewed motion for the court's assistance in recruiting him counsel, Dkt. 98, is DENIED.

3.  Plaintiff's motion for a bench trial, Dkt. 97, is DENIED as moot.

4.  Defendants' motions for summary judgment, Dkt. 72 and Dkt. 79, are GRANTED.

5.  The clerk of court is directed to enter judgment for defendants and close the case.

Entered July 20, 2020.

BY THE COURT:

/s/_____
JAMES D. PETERSON
District Judge